IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| TONY LAMAR PINKARD, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:05-cv-746-MEF-VPM |
| ) | |
| SHIRLEY JOHNSON AND CRAIG ) | |
| DAVIDSON, ) | |
| ) | |
| Defendants. ) | |

## <u>DEFENDANTS' SPECIAL REPORT</u>

COME NOW Shirley Johnson and Craig Davison, Defendants in the above-styled cause, and submit their Special Report to the Court.

### INTRODUCTION

Plaintiff Tony Lamar Pinkard, Sr., filed his Complaint on August 8, 2005. On August 11, 2005, this Court ordered Defendants, Shirley Johnson and Craig Davidson, to file a Special Report addressing Plaintiff's claims. On August 30, 2005, this Court dismissed all claims against the Randolph County Jail, Randolph County Commissioners, and Judge W. Patrick Whaley. On October 13, 2005, this Court granted Defendants' Motion for Extension of Time giving Defendants Shirley Johnson and Craig Davidson until November 10, 2005, to file their Special Report and Answer.

On February 24, 2005, Plaintiff was arrested on charges of Domestic Violence Harassment in the Third Degree and Failure to Appear with regard to Child Support. (Exhibit A, Complaint of Bobbie Pinkard dated February 25, 2005; Exhibit B, Writ of Arrest dated February 25, 2005; Exhibit C, Arrest Report dated February 24, 2005; Exhibit D, SJIS Case Detail, DC 2005-163; Exhibit E, SJIS Case Detail, CS 2003-104.) He was booked into the Randolph

County Detention Facility on February 25, 2005.  (Exhibit F, Booking Sheet dated February 25, 2005.)  Plaintiff bonded out of jail on March 5, 2005.  (Ex. F, Booking Sheet dated February 25, 2005; Exhibit G, Consolidated Bond Documents dated March 3, 2005.)  However, he was re-arrested on March 26, 2005, for failure to appear on matters related to his Domestic Violence Harassment charge and was re-booked into the Randolph County Detention Facility.  (Exhibit H, Arrest Report dated March 26, 2005; Exhibit I, Booking Sheet dated March 26, 2005.)  Plaintiff pled guilty to the charge of Domestic Violence Harassment in the Third Degree on April 5, 2005, and was sentenced to twelve months confinement.  (Ex. D.)  On July 29, 2005, Plaintiff was charged with Negotiating a Worthless Instrument.  (Exhibit J, SJIS Case Detail, DC 2005-569.)  He pled guilty to this charge on August 16, 2005, and was sentenced to twelve months confinement.  (Id.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges claims regarding his medical care as well as claims regarding the conditions of his confinement.  (Plaintiff's Complaint.)  More specifically, he alleges that he slipped in the shower and hurt his right toe and had a knot behind his ear and was denied medical attention.  He further alleges that the jail is overcrowded, that inmates slip on the floors, that the wiring is faulty, that there are water leaks, inadequate ventilation, that inmates eat with the same spoon every day, that there are no fire alarms, that some of the toilets do not work, that the showers leak to the kitchen, that there is no cell light in the cell blocks, that he cannot shower when he wants to, that a jailer allowed an inmate to put mothballs in the food, that there is fungus or bacteria in the showers, that he got fungus on his feet when his shoes were taken from him, and that he is afraid of catching a disease because no screening is done. (Plaintiff's Complaint.)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit K, Affidavit of Shirley Johnson[1], "Johnson aff." ¶ 4; Exhibit L, Affidavit of Craig Davidson[2], "Davidson aff.¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

**I.    FACTS**

    **A.    Medical Allegations**

Defendants have never denied necessary medical care or treatment to an inmate, nor have Defendants ever authorized or allowed anyone to do so. (Ex. K, Affidavit of Shirley Johnson, "Johnson aff." ¶ 58; Ex. L, Affidavit of Craig Davidson, "Davidson aff." ¶ 5.)

Upon admission to the Randolph County Detention Facility, a jail staff member completes a health screening form on the inmate. (Ex. K, Johnson aff. ¶ 6; Ex. L, Davidson aff. ¶ 6.) It is the policy and procedure of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written medical request form or made verbally to a correctional officer. The inmate is then put

---

[1] Shirley Johnson is the Jail Administrator of the Randolph County, Alabama Detention Facility, and has served as Jail Administrator since 1999. She began her employment with the Randolph County Sheriff's Department in 1989 as a matron. She is a graduate of Jail Management School. (Ex. K, Johnson aff. ¶ 2.)

[2] Craig Davidson is the Assistant Jail Administrator of the Randolph County, Alabama, Jail. He has served the Randolph County Sheriff's Department for three years as a Captain. Before that he served as a Sergeant at the Chambers County Sheriff's Department for three years and as a jailer for two months. He is a graduate of Jail Management School. (Ex. L, Davidson aff. ¶ 2.)

3

on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner. (Ex. K, Johnson aff. ¶ 7; Ex. L, Davidson aff. ¶ 7.)

The health and medical treatment of inmates at the Randolph County Detention Facility is an important matter. Every inmate request for medical attention is treated seriously by Defendants. Upon receipt of an inmate request for medical care, established procedures are followed to assure that a qualified health professional evaluates the inmate in a timely manner. (Ex. K, Johnson aff. ¶ 8; Ex. L, Davidson aff. ¶ 8.) The Randolph County Sheriff's Department operates the Randolph County Detention Facility pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates. (Ex. K, Johnson aff. ¶ 9; Ex. L, Davidson aff. ¶ 9.) It is the policy of the Randolph County Sheriff's Department that all inmates confined in the Randolph County Detention Facility be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained. All medical care rendered to inmates in the Randolph County Detention Facility is delivered under the direction of a licensed health care practitioner. (Ex. K, Johnson aff. ¶ 10; Ex. L, Davidson aff. ¶ 10.)

The Jailers at the Randolph County Facility have access to over-the-counter medication such as Tylenol, Ibuprofen, and Pepto-Bismol to distribute as needed to inmates. (Ex. K, Johnson aff. ¶ 11; Ex. L, Davidson aff. ¶ 11.) Inmates are medically segregated if ordered by a medical doctor. (Ex. K, Johnson aff. ¶ 12; Ex. L, Davidson aff. ¶ 12.)

Plaintiff was taken to Wedowee Hospital on May 19, 2005, and September 8, 2005. On May 19, 2005, Plaintiff was treated for complaints of coughing and wheezing. On September 8, 2005, Plaintiff was treated for an ingrown toenail. (Ex. K, Johnson aff. ¶ 13; Ex. L, Davidson aff. ¶ 13; Exhibit M, Wedowee Hospital Medical Records.)

Plaintiff was treated at the Wedowee Hospital Clinic on March 31, 2005, April 12, 2005, April 27, 2005, August 31, 2005, and September 21, 2005, by Nurse Practitioner, Ricky Daniel, for complaints including back pain, an ingrown toenail, and earwax buildup. (Ex. K, Johnson aff. ¶ 14; Ex. L, Davidson aff. ¶ 14; Exhibit N, Wedowee Hospital Clinic Medical Records.)

**B.    Conditions of Confinement Allegations**

Upon their arrival and booking at the Jail, inmates receive both verbal and written instructions regarding Jail rules. (Ex. K, Johnson aff. ¶ 15; Ex. L, Davidson aff. ¶ 15.) It is the policy and procedure of the Randolph County Detention Facility to document and record every incident that occurs within the Jail, whether it involves inmates only or an inmate and a staff member. (Ex. K, Johnson aff. ¶ 16; Ex. L, Davidson aff. ¶ 16.)

It is the policy and procedure of the Randolph County Detention Facility to provide the inmates housed therein a clean and sanitary environment that meets and exceeds the standards required by law. Per the Randolph County Detention Facility Inmate Rules and Regulations, inmates must maintain both their personal spaces and Jail common areas in a neat and orderly manner. (Ex. K, Johnson aff. ¶ 17; Ex. L, Davidson aff. ¶ 17.) The Randolph County Detention Facility has in place a systematic cleaning program. Inmates are provided cleaning materials to use for their maintenance of personal and common areas. (Ex. K, Johnson aff. ¶ 18; Ex. L, Davidson aff. ¶ 18.)

The Randolph County Detention Facility has bathing facilities which are available to all inmates daily. Hot and cold water is available for bathing, and inmates are provided soap and towels. (Ex. K, Johnson aff. ¶ 19; Ex. L, Davidson aff. ¶ 19.)

The food preparation and serving areas are cleaned daily and are inspected regularly by state and local health agencies. (Ex. K, Johnson aff. ¶ 20; Ex. L, Davidson aff. ¶ 20.) Inmates are provided with hot water and soap with which to wash their eating utensils. (Ex. K, Johnson aff. ¶ 21; Ex. L, Davidson aff. ¶ 21.) Trusty inmates that assist with the food service do so only under close supervision. There was an instance when a trusty put mothballs in peanut butter; however, due to the close supervision of the jail staff, that trusty was caught, and the peanut butter was disposed of before it had left the kitchen area. (Ex. K, Johnson aff. ¶ 22; Ex. L, Davidson aff. ¶ 22.)

It is the policy and procedure of the Randolph County Detention Facility to maintain a jail that is safe both for its employees and inmates. To that end, the Randolph County Detention Facility fire detection and suppression systems are inspected annually to assure that each is in proper working order throughout the facility. (Ex. K, Johnson aff. ¶ 23; Ex. L, Davidson aff. ¶ 23.) The Detention Facility is subject to inspection by numerous State agencies responsible for guaranteeing that the Detention Facility structures comply with applicable codes and regulations. When a fire or general safety issue arises – whether through an Inmate Request, an Inmate Grievance or Jail staff observation – the concern is addressed promptly and appropriately. (Ex. K, Johnson aff. ¶ 24; Ex. L, Davidson aff. ¶ 24.) Jail staff are instructed in the use of portable fire extinguishers. (Ex. K, Johnson aff. ¶ 25; Ex. L, Davidson aff. ¶ 25.) An emergency fire evacuation plan is posted in the Detention Facility. The Detention Facility also features emergency exits and appropriate fire apparatus. (Ex. K, Johnson aff. ¶ 26; Ex. L, Davidson aff. ¶

26.) There are cell lights in all cell blocks. When they become damaged due to inmate vandalism, they are repaired as soon as possible. (Ex. K, Johnson aff. ¶ 27; Ex. L, Davidson aff. ¶ 27.)

Officer Willard Ford, the arresting officer during the Plaintiff's March 26, 2005, arrest, informed Craig Davidson that the Plaintiff was making suggestive remarks regarding suicide. Upon the Plaintiff's arrival at the jail, Craig Davidson instructed the jail staff to place the Plaintiff on suicide watch and to remove his shoelaces from his tennis shoes as a precaution. Sometime later, the Plaintiff destroyed a jail issued uniform and fashioned orange shoelaces, out of the uniform, for his tennis shoes. Because of his destructing jail property, his tennis shoes were taken and put with his property. He was allowed to wear his non-lace-up shoes. (Ex. L, Davidson aff. ¶ 27; see also Exhibit O, Observation Sheet.) Therefore, at no time was Plaintiff ever made to go without wearing shoes.

    C.    **Plaintiff's Noncompliance with Jail Grievance Procedure**

Plaintiff has not complied with the grievance procedures of the Randolph County Detention Facility. Defendants never received any grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. As there is a grievance procedure in the Randolph County Detention Facility, it could have been used by the Plaintiff to make known any questions or concerns he had regarding his incarceration. Defendants never received any such grievance, and to the best of their knowledge, no grievance was ever written by the Plaintiff concerning these matters. Had a grievance been submitted by the Plaintiff, it would have been placed in his inmate file per Jail policy. However, Plaintiff's inmate file is devoid of any such grievance. (Ex. K, Johnson aff. ¶ 28; Ex. L, Davidson aff. ¶ 28.)

**II.     LAW**

    **A.     All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.     Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.     Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Randolph County Detention Facility. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). No grievance has been filed by Plaintiff in regards to the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Randolph County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

**2.     Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury that is greater than de minimus, his complaint is due to be dismissed.

**C.     Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as jail officials of Randolph County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

### a. **Defendants are entitled to qualified immunity on Plaintiff's medical claims.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that Plaintiff did not suffer from a serious medical need. In his Complaint, he cites medical conditions that were diagnosed as earwax buildup and an ingrown toenail, which are obviously minor medical issues. Further, throughout Plaintiff's incarceration at the Randolph County Detention Facility, he was treated by licensed and trained medical providers at the Wedowee Hospital and the Wedowee Hospital Clinic a total of seven times in the past eight months that he has been incarcerated. Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[3] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's

---

[3] The medical director was a trained and licensed nurse. 302 F.3d at 846.

diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by trained and licensed medical providers at the Wedowee Hospital. Defendants, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors. Therefore, Defendants are entitled to qualified immunity from Plaintiff's claims.

### b. Defendants are entitled to qualified immunity on Plaintiff's Conditions of Confinement Claims.

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535. "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. In addition, Plaintiff must also show that Defendants had some personal involvement in the alleged deprivation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). Plaintiff cannot show that Defendants have been deliberately indifferent to conditions at the Randolph County Detention Facility. Deliberate indifference to an inmate's health or safety can only be shown if the defendants know that the inmate faces a substantial risk of serious harm and disregard the risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825 (1994).

Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any of his allegations constituted cruel and unusual punishment. In this case, none of the conditions of which Plaintiff complaints constitutes an excessive risk to Plaintiff's health or safety. Plaintiff has not shown how he has been injured as a result of any of his allegations. Further, Plaintiff never filed a grievance concerning his allegations, and there is no other evidence showing that the Defendants knew of or disregarded any alleged risk. It is clear from the evidence that Defendants acted according to established lawful policies and procedures with regard to Plaintiff. Based on the foregoing, it is clear that Defendants have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

### C.  There is no *respondeat superior* liability under 42 U.S.C. § 1983.

To the extent that Plaintiff's claims against Shirley Johnson and Craig Davidson are an attempt to hold them liable under a *respondeat superior* theory, they must fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

### D.  To the extent that Plaintiff's claims are based on alleged injuries of other inmates, those claims must fail for lack of standing..

Prior to determining the merits of a case, the court must consider whether the plaintiff has standing to bring the matter to the court for adjudication. The United States Supreme Court stated: "In essence the question of standing is whether the litigant is entitled to have the court

16

decide the merits of the dispute or of particular issues." Warth v. Sledin, 422 U.S. 490, 498 (1975).

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.

Warth, 422 U.S. at 698-499.

To satisfy standing requirements, a plaintiff must show the following:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-181 (2000). At a minimum a plaintiff must show that he personally suffered some actual or threatened injury. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982).

In the instant case, Plaintiff's allegations concerning alleged injuries to other inmates do not establish a personal injury in fact. Therefore, these claims against Defendants must be dismissed due to lack of subject matter jurisdiction.

F.  **Summary Judgment Standard.**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. <u>Greason</u>, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[4] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts School of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Tony Lamar Pinkard, Sr. in the Complaint. The Plaintiff's Complaint is due to be dismissed, because Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[4] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 10th day of November, 2005.

        s/C. Richard Hill, Jr.
        C. RICHARD HILL, JR. Bar No. HIL045
        Attorney for Defendants
        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Drive (36117)
        Post Office Box 240909
        Montgomery, Alabama 36124
        Telephone: (334) 262-1850
        Fax: (334) 262-1889
        E-mail: rhill@webbeley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 10th day of November, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

        Tony Lamar Pinkard, Sr.
        Randolph County Jail
        P.O. Box 347
        Wedowee, AL 36278

        s/C. Richard Hill, Jr.
        OF COUNSEL